**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello**

Civil Action No. 12-cv-02641-CMA

MARIAH GRAGERT,

     Plaintiff,

v.

CAROLYN COLVIN, Acting Commissioner of Social Security,

     Defendant.

---

## ORDER AFFIRMING ALJ'S DECISION DENYING DISABILITY BENEFITS

---

This matter is before the Court on Plaintiff Mariah Gragert's appeal of the Commissioner's April 2012 decision denying her claim for disability benefits. Jurisdiction is proper under 42 U.S.C. § 405(g). For the following reasons, this Court affirms the judgment of the Administrative Law Judge (ALJ).

## I. BACKGROUND

### A. MEDICAL EVIDENCE

At the alleged onset date of her disability Plaintiff was 19 years old. (AR at 1724.)[1] She was 29 years old as of the date of the ALJ's decision in April 2012. (*Id.*) After graduating high school, Plaintiff earned certification as a nursing assistant. (AR at 1724-25.) She worked at various jobs, including as a nursing assistant, motel housekeeper, waitress, kennel worker, and tax preparer. (AR at 3246, 3253-54.)

---

[1] There are two separate records relevant to this appeal: the Administrative Record (Doc. # 14) and the Supplemental Administrative Record. (Doc. # 20.) This Court refers to the former as "AR," and the latter as "Supp. AR."

In 2002, Plaintiff began reporting headaches, as well as fainting spells that were followed by some paralysis and muscle weakness. (AR at 117-33.) She also reported some problems with her vision such as blurriness and sensitivity to light. (AR at 266, 415.) A CT Scan and an MRI revealed a non-cancerous cyst in the base of Plaintiff's skull, which was the alleged cause of many of these ailments. (AR at 117, 231-35.)

Plaintiff was initially treated with medications, which, as she reported, "drastically improved" the effects of the cyst. (AR at 328, 336); *see also* (AR at 290 (in January 2003, an emergency room (ER) physician noted that Plaintiff, who arrived via ambulance, stated "I'm ready to go home" after receiving pain medication).) Ultimately, however, in November 2003, a surgeon decided to "fenestrate" the cyst, *i.e.*, he created an opening to allow the cyst to drain. (AR at 492-98, 504-07.)

After the surgery, as of February 2004, Plaintiff reported improvement of her headaches, though she claimed to still have fainting spells. (AR at 492.) Plaintiff received further non-surgical treatment for both headaches and various fainting episodes throughout 2003 and 2004. *See, e.g.*, (AR at 1083, 1085, 1270.)

Then, in October 2004, a surgeon placed a shunt to drain Plaintiff's cyst, which also led to an improvement in her condition. (AR at 915-39.) That same month, however, Plaintiff was diagnosed with insulin-dependent diabetes, and she saw a specialist for assessment and management of her condition. (AR at 1208-10, 1440.)

Plaintiff continued to report both improvements and deteriorations in her condition after the 2004 surgery. On the one hand, Plaintiff reported at points that she was "doing well" and working at a tax company (AR at 1042) and that she had "good

overall health" (AR at 2554) and "an active lifestyle." (*Id.*)  On the other hand, during

this period Plaintiff reported that she sometimes had multiple seizures in one day

(AR at 1128) and that she was treated for symptoms related to her diabetes and

hypothyroidism.  (AR at 108-16; AR at 1482-83.)  Further, the record is less than clear

on the cause of many of these ailments, as multiple medical officials indicated that

a worsening of Plaintiff's symptoms could have stemmed from her failure to follow

prescribed treatment plans.  *See, e.g.*, (AR 1482-83; 1562.)

Additional facts about Plaintiff's medical history are supplied as they become

relevant to resolving each of the matters she raises in this appeal.

**B.     PROCEDURAL HISTORY**

This case has a long procedural history but for present purposes the underlying

denial of disability benefits stems from Plaintiff's application for Supplemental Security

Income and Child's Insurance Benefits in May 2005.  In that application, Plaintiff alleged

disability due to, *inter alia*, depression, diabetes, and the cyst.  (AR at 813.)

Plaintiff's claims were denied initially, and she has pursued substantial litigation

related to this claim since 2005.  Ultimately, the Appeals Council remanded Plaintiff's

case for further consideration by the ALJ who held two hearings regarding the present

claim on December 7, 2011, and April 4, 2012.  At the hearings, Plaintiff was

represented by counsel.  Plaintiff testified, as did a Vocational Expert (VE) and Dr. Don

Clark, a doctor who examined Plaintiff's medical records.  *See, e.g.*, (AR at 3253-54;

Supp. AR at 3495-3510.)

The ALJ issued her decision on April 17, 2012, and issued an amended decision on April 18, 2012.  In those decisions the ALJ applied the five-step sequential evaluation process outlined in 20 C.F.R. §§ 404.1520 and 416.920 to determine whether Plaintiff was disabled.  In particular, the ALJ determined that:

(1) Plaintiff did not engage in substantial gainful activity as of April 26, 2002, the alleged onset date;

(2) Plaintiff had the following impairments: seizure disorder; migraine headaches; brain cyst status post-shunt; diabetes mellitus; depression; post-traumatic stress disorder and poly substance abuse;

(3) Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1;

(4) Plaintiff had the residual functional capacity (RFC) to perform a range of light work as defined in 20 CFR 416.967(b);

(5) Plaintiff was capable of performing past relevant work as a motel house-keeper and could also work as an amusement recreation attendant, assembler, or cafeteria attendant.

(AR at 1803-15.)  Plaintiff appealed this adverse decision to the Appeals Council, which denied Plaintiff's request for review.  (AR at 1764-67.)  Plaintiff then filed the instant action with this Court petitioning for judicial review of the ALJ's determinations.  (Doc. # 1.)

## II.  <u>STANDARD OF REVIEW</u>

## A.  STANDARD OF REVIEW

This Court's review of the ALJ's determination is limited to determining whether the ALJ's decision is supported by substantial evidence and whether the Commissioner

-- through the ALJ -- applied the correct legal standards.  *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009).

Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  It requires more than a scintilla, but less than a preponderance.  *Wall*, 561 F.3d at 1084.  In reviewing the record and the arguments of counsel, the Court does not reexamine the issues de novo, *Sisco v. United States Department of Health and Human Services*, 10 F.3d 739, 741 (10th Cir. 1993), nor does it re-weigh the evidence or substitute its judgment for that of the Commissioner, *Salazar v. Barnhart*, 468 F.3d 615, 621 (10th Cir. 2006).  Thus, even when some evidence may have supported contrary findings, the Court "may not displace the agency's choice between two fairly conflicting views," even if the Court may have "made a different choice had the matter been before it de novo."  *Oldham v. Astrue*, 509 F.3d 1254, 1257-58 (10th Cir. 2007).

## III.  ANALYSIS

In this case, Plaintiff challenges the ALJ's decision on six grounds.  As presented in Plaintiff's opening brief, these arguments are:

A. That the ALJ erred by failing to consider whether claimant had a "closed period" of disability.

B. That the ALJ improperly evaluated claimant's mental impairments.

C. That the medical evidence fails to support the ALJ's findings in the Amended Decision that claimant's diabetes does not provide any basis for a finding of disability.

D. That the ALJ's finding that the claimant can return to past work as a motel maid is inconsistent with findings that the claimant should work only in a relatively clean environment with low levels of pollutants.

    E.  That the ALJ erred in not including the non-exertional limitations caused by claimant's mental impairments and headaches in her RFC assessment.

    F.  That the ALJ failed to consider claimant's testimony from the two prior hearings.

(Doc. # 17 at iii.)  The Court considers each of these arguments in turn and explains below why each fails.

## A.    CLOSED PERIOD EVIDENCE

First, Plaintiff takes exception to the manner in which the ALJ considered whether Plaintiff's ailments were disabling at any point in the ten-year period from 2002 until 2012.  In particular, Plaintiff alleges that the ALJ erred by ignoring the changing nature of Plaintiff's condition over this period.  Further, Plaintiff alleges that the ALJ failed to consider that, for a closed period from 2002, until Plaintiff had her second surgery in 2004, Plaintiff was disabled due to her "bilateral vision problems and dizziness."  (Doc. # 22 at 1.)  If Plaintiff was disabled for this closed period, she might be entitled to disability payments.  *Cf. Pickett v. Bowen*, 833 F.2d 288, 289 n.1 (11th Cir. 1987) (discussing closed-period benefit cases).

Plaintiff's position here is not persuasive.  As an initial matter, while Plaintiff alleges that the ALJ treated this ten-year period as if Plaintiff's symptoms were static, the record is replete with narrations from the ALJ of the changing nature of Plaintiff's condition.  *See, e.g.*, (AR 1806 (chronicling the history of blurred vision problems and "improv[ements]" in vision as a result of treatments).)

Moreover, in her briefing, Plaintiff points to **no** record evidence establishing that her conditions were severe enough for the closed period between 2002 and her surgery

in 2004 to qualify as disabled.[2]  Rather, Plaintiff seems to (erroneously) assume that just because her condition improved after her 2004 surgery, it must have been at a level severe enough to qualify for disability before that date.

Finally, substantial evidence supports the ALJ's position that Plaintiff was not disabled for any portion of the ten-year period under consideration, including the period from 2002-2004.  *Cf. Mobley v. Astrue*, No. CV 312–008, 2013 WL 653028, at *2 (S.D. Ga. Feb. 20, 2013) (unpublished) ("[W]here the ALJ's finding that the claimant was not under a disability at any time during the period under consideration is supported by substantial evidence, the ALJ does not err in failing to consider the claimant's eligibility for a closed period of disability within that period") (citing *Jones v. Comm'r of Soc. Sec.*, 181 F. App'x 767, 773 (11th Cir. 2006) (per curiam)).

In particular, although there are reports from May 2002 that Plaintiff had periods punctuated by fainting episodes or sensitivity to light  (AR at 266), there are also reports from October 2002 that these types of symptoms "drastically improved" with medication. (AR at 328.)  The record reveals -- and the ALJ noted -- the same fluctuations in Plaintiff's health outlook throughout the period from 2002 through 2012.  *Compare,*

---

[2]  All Plaintiff's citations in this portion of the briefing are limited to the ALJ's opinion—not the record evidence.  Plaintiff makes an off-handed (and uncited) reference to the medical testimony of two doctors who treated her during this period, who found that Plaintiff's conditions were severe.  But she fails to note that these physicians also suggested that medication could be used to treat Plaintiff's condition, s*ee, e.g.*, (AR at 279-80 (reporting that medication reduced Plaintiff's headaches to "tolerable levels")), and that they provided testimony inconsistent with other record evidence *compare, e.g.*, (AR at 281 (one of Plaintiff's favored experts noting that Plaintiff has "no work capacity" in January 2003), *with* AR at 1812 (ALJ finding that this report was inconsistent with the record evidence as a whole, which showed that Plaintiff's condition improved with treatment; *see also Raymond v. Astrue*, 621 F.3d 1269, 1272 (10th Cir. 2009) (noting that ALJ reasonably discounted treating physician opinion that was inconsistent with other medical evidence.)  At best, then, even the testimony of Plaintiff's favored experts is ambiguous as to the severity of her alleged disability at this time.  This is insufficient to establish that the ALJ's decision is not supported by substantial evidence.

*e.g.*, (AR at 2289 (noting that in March 2009, Plaintiff underwent an extended inpatient neurological consultation for her seizures), *with* AR at 2347 (noting that in March 2009 report Plaintiff alleged to have had "only two seizures over the last year"); Supp. AR at 3287 (testimony from Dr. Clark noting that the surgery had "corrected" Plaintiff's problems "amazingly well"); Supp. AR at 3295-96 (testimony from Dr. Clark suggesting that Plaintiff's headache ailments had "basically . . . been relieved" since 2002).)

Weighing this potentially contradictory evidence is the province of the ALJ -- and this Court is prohibited from giving greater weight to evidence more favorable to Plaintiff, even if it would have been inclined to do so on *de novo* review.

**B.    MENTAL IMPAIRMENTS AND RESIDUAL FUNCTIONAL CAPACITY**

Plaintiff's second argument relates to the ALJ's assessment of Plaintiff's mental functioning.  The ALJ ultimately found that Plaintiff's mental impairments caused her no more than moderate limitations of concentration, persistence, and pace.  The ALJ reached this conclusion by relying on her own assessment of Plaintiff, her review of the record evidence, and testimony from Dr. Clark.  (AR at 1806-1811.)

Plaintiff attacks these findings and the reasoning used to reach the findings on a number grounds, all of which fail for the reasons detailed below.

1. Proper Psychiatric Technique Form

First, Plaintiff alleges that contrary to a remand order from the Appeals Council, "the ALJ performed her own independent assessment without use of a psychiatric technique form."  (Doc. # 17 at 51.)  In its Response, the government addressed this specific argument raised by Plaintiff as follows.

> Plaintiff is incorrect to the extent that she suggests that the ALJ could not perform *her own* assessment of Plaintiff's mental functioning – far from it, the regulations explicitly reserve functional assessment to the ALJ as an administrative finding. *See* 20 C.F.R. §§ 404.1527(d)(2), 404.1545, 404.1546(b).  Plaintiff also incorrectly contends that the ALJ was required to complete a *psychiatric technique form*.  The Appeals Council's remand order instructed the ALJ to follow the "special technique" and rate the degree of functional limitations resulting from Plaintiff's mental impairment consistent with the regulations (*see* AR 1825, citing 20 C.F.R. § 404.1520a).  The Appeals Council did not instruct the ALJ to use a form in applying the "special technique," nor do the regulations require [as] such.

(Doc. # 21 at 32.)  Plaintiff's response to this argument in her Reply is that the government failed to follow the relevant regulations, in particular 20 C.F.R. § 404.1520a, related to the "special technique" referenced by the government.  (Doc. # 22 at 2-3.) In other words, Plaintiff appears to concede that she erred in suggesting that the ALJ had to use a particular form.

The Court concurs fully in the reasoning offered by the government in its Response as to why this argument fails.  Further, Plaintiff has forfeited what this Court construes as a second argument, related to the ALJ's alleged failure to follow 20 C.F.R. § 404.1520a.  This particular argument was raised only in the Reply and, to the extent Plaintiff intended to raise it in the opening brief, it was insufficiently developed to be considered.  *See Eateries, Inc. v. J.R. Simplot Co.,* 346 F.3d 1225, 1232 (10th Cir. 2003) (concluding that appellant's superficial argument with no record citations or legal authority was "insufficient to garner appellate review"); *Murrell v. Shalala*, 43 F.3d 1388, 1390 (10th Cir. 1994) (reasoning, in the Social Security context, that "perfunctory complaints [that] fail to frame and develop an issue sufficient to invoke appellate review" are forfeited and collecting further authorities in support of this proposition); *see also*

*SCO Grp., Inc. v. Novell, Inc.*, 578 F.3d 1201, 1226 (10th Cir. 2009) (noting that

arguments raised for the first time in a reply brief are waived).[3]

 2. <u>Dr. Clark's Qualifications</u>

 Second, Plaintiff questions whether Dr. Clark can offer any findings related to

mental impairments or seizures and suggests that the ALJ's reliance on Dr. Clark was in

error.  Plaintiff further attempts to limit Dr. Clark's expertise by reasoning that he is an

internal medicine doctor and, therefore, not an expert in the ailments afflicting Plaintiff.

 This argument also fails.  As an internal medicine doctor, Dr. Clark has broad

medical training and is an acceptable medical source who is qualified to offer evidence

to establish what a claimant can still do both physically and mentally. *See* 20 C.F.R.

§ 404.1513(a)(1), (c).

 Further, Dr. Clark drew upon this training -- and his review of others'

observations of Plaintiff's attention span and her functioning in spite of her seizures --

when he testified before the ALJ.  *See, e.g.*, (Supp. AR 3283-84.)  Plaintiff provides

nothing other than her own lay speculation about the scope of Dr. Clark's expertise to

support her indictment of his qualifications.  This is an insufficient basis to attack the

credentials of a medical professional.

---

[3]  Plaintiff did suggest in the opening brief "the ALJ did not perform an adequate analysis
of how [Plaintiff's] mental condition impacted claimant's RFC as required by 20 CFR
§ 404.1520a(a)(2)."  (Doc. # 17 at 53.)  But Plaintiff failed to explain exactly **why** the analysis
was inadequate.  Plaintiff merely stated that frequent episodes of pseudoseizures or seizures
would somehow prevent her from maintain all pace and persistence in a job -- an assertion that
Plaintiff fails to bolster with any citation to record and one which contradicts the medical
testimony discussed throughout this order.  In any case, what Plaintiff musters as an argument
in the opening brief is insufficient for this Court to find that substantial evidence does not support
the ALJ's conclusions.

3.  Dr. Kitson's Assessment

Next, as Plaintiff emphasizes, in the summer of 2009, Dr. Steven Kitson assessed that Plaintiff had a GAF rating of 45 and noted that Plaintiff was depressed and anxious, as a result of being the victim of an alleged sexual assault perpetrated by one of her husband's friends.[4]  Plaintiff reasons that it was error for the ALJ: (1) not to take this evidence specifically into account and (2) to credit Dr. Clark's position over Dr. Kitson's.

These arguments are also unpersuasive.  First, Plaintiff inexplicably fails to note that the ALJ **did** reference and discuss the medical treatment records from Dr. Kitson. *See* (AR at 1810-12 (citing numerous times to "Exhibit 41F," which contains Dr. Kitson's reports)).  Second, contrary to Plaintiff's assertion, Dr. Kitson did not render any opinions that needed to be weighed by the ALJ.  Plaintiff appears to construe Dr. Kitson's July 12, 2009 treatment note and Global Assessment of Functioning (GAF) rating as an opinion requiring consideration by the ALJ.  *See* (Doc. # 17 at 19-20, 51 (citing AR at 2275-78)).  But it is well established that ALJs are not required to take these ratings into account and they are only a snapshot of a claimant's functioning at a particular point in time.  *See, e.g.*, *Luttrell v. Astrue*, 453 F. App'x 786, 792 n.4 (10th Cir. 2011) ("This court has repeatedly noted that generalized GAF scores, which do not specify particular work-related limitations, may be helpful in arriving at an RFC but are not essential to the RFC's accuracy." (internal citations and quotation marks omitted)).

---

[4]  There are scant details in the record regarding this sexual assault.  Dr. Kitson's own assessment indicates that Plaintiff noted both that she was sexually assaulted (AR at 2285) and, several months later, had been accused of falsely reporting the same sexual assault (AR at 2280).

Third, the Tenth Circuit has noted that a GAF rating of 45 could indicate problems unrelated to the claimant's ability to hold a job and is not necessarily evidence of an impairment seriously interfering with the claimant's work-related functional abilities.  *See Seymore v. Apfel*, 131 F.3d 152, at *2 (10th Cir. 1997) (unpublished) ("Contrary to claimant's contention, a GAF rating of 45 may indicate problems that do not necessarily relate to the ability to hold a job; thus, standing alone without further narrative explanation, the rating of 45 does not evidence an impairment seriously interfering with claimant's ability to work.").

Fourth, it was not error for the ALJ to credit the testimony of Dr. Clark over that of Dr. Kitson.  Indeed, much of Dr. Kitson's testimony actually supports Dr. Clark's general position that Plaintiff's condition improved over time.  While Plaintiff emphasizes Dr. Kitson's reports related to Plaintiff's ailments from the summer of 2009, less than a year later, in April 2010, Dr. Kitson provided a very different report of Plaintiff, noting that she "is alert and oriented, with no evidence of severe depression.  She is mildly anxious.  No evidence of thought disorder, psychotic symptoms, [or] suicidal thoughts. Insight and judgment are fair."  (AR at 2279.)  Dr. Kitson provided a similar assessment in May 2011, stating that Plaintiff "is alert and oriented[;] friendly[,] cooperative[,] with normal speech pattern.  She does not appear to be in acute distress at this time.  Her mood is good[.  H]er affect is mood congruent."  (AR at 2272.)

To be sure, Dr. Kitson's earlier 2009 reports about Plaintiff do indeed paint a more dire picture of her health outlook, but for the reasons explained above, those views are not dispositive as to Plaintiff's disability.  Rather, to the extent that the views

of Dr. Clark and Dr. Kitson are inconsistent with each other or even internally inconsistent, it is the ALJ's duty to resolve the conflicts in weighing the evidence.  The ALJ has performed such an analysis here -- even taking into account how reports from Dr. Kitson are consistent with the conclusions drawn by Dr. Clark (AR at 1810) -- and it is not this Court's prerogative to reweigh the evidence.

      4.  Listing 12.04

Plaintiff's next argument concerns what the parties term "the Listings," 20 C.F.R. pt. 404, subpt. P, app. 1.  Under the Listings, if an impairment is sufficiently severe, it may entitle a claimant to a finding of disability without consideration of vocational factors.  20 C.F.R. § 404.1520(d).  The ALJ considered whether Plaintiff's condition met or medically equaled the criteria of any such listed impairment.  *See* (AR at 1806-09 (considering neurological disorders, mental disorders, and diabetes)).  However, the ALJ found that the evidence did not demonstrate the degree of severity required to reach Listing-level severity.  *See* (AR at 1806-09.)

Plaintiff attacks this finding on several grounds.  First, she argues that because "[her] seizures are psychological in nature and have resulted in multiple episodes and ER visits, there can be no question that the claimant meets the [Paragraph C] Criteria [of Listing 12.04[5]]."  (Doc. # 17 at 52.)  Second, Plaintiff contends that her alleged seizures resulted in repeated episodes of decompensation "of some duration" as evidenced by ER visits; a residual disease process as evidenced by "increased stress

---

[5]  In her opening brief, Plaintiff references Listings 12.04, 12.06, and 12.09, but she addresses only listing 12.04 by paraphrasing the relevant conditions noted in Listing 12.04.  To the extent she was attempting to advance an argument related to Listings 12.06 or 12.09, she has forfeited those arguments by failing to develop them further.

and activity result[ing] in seizures."   (Doc. # 17 at 52-53).  Third, she further suggests

in her Reply that, because she testified to having frequent seizures and/or

pseudoseizures, this alone is enough to qualify as an impairment under this category.

(Doc. # 22 at 7.)

These arguments fail.  To meet the Paragraph C criteria of Listing 12.04, a

claimant must show a medically documented history of a chronic affective disorder of at

least two years' duration that has caused more than a minimal limitation of ability to do

basic work activities, and, as relevant here, "repeated episodes of decompensation,

each of extended duration."  20 C.F.R. pt. 404, subpt. P, app. 1, Listing 12.04.  The

criteria for repeated episodes of decompensation, each of extended duration, requires

about three episodes in one year, each lasting for about two weeks.  *See* 20 C.F.R.

pt. 404, subpt. P, app. 1, § 12.00(C)(4).

Plaintiff disregards this standard and essentially petitions this Court to credit her

subjective testimony about her seizures, to the exclusion of all contrary record evidence

and testimony from medical experts.  This alone is enough to undermine her position.

In any case, Plaintiff fails to point to -- and this Court similarly cannot find -- any two-

week period providing such evidence of decompensation that would qualify under

Criteria C.[6]

---

[6]  Plaintiff attempts to advance a related argument that the ALJ's finding that Plaintiff did
not meet any of the "B" Criteria for Listings 12.04, 12.06, and 12.09 was directly contrary to
Dr. Kitson's assessment.  (Doc. # 17 at 51.)  This argument is nothing more than a conclusory
assertion with no explanation for why the ALJ's finding is contrary to Dr. Kitson's assessment.
This argument is therefore forfeited.

**C.      EVALUATION OF PLAINTIFF'S DIABETES**

Next, Plaintiff questions the ALJ's review of the record evidence related to

Plaintiff's diabetes.  In assessing how this ailment affected Plaintiff, the ALJ reviewed

the relevant evidence, including testimony from Dr. Clark, who opined that Plaintiff had

no serious complications due to her diabetes but that, like many young people she had

some trouble monitoring her insulin levels when she was first diagnosed, but she

improved her self-monitoring as of 2010.  (AR at 1812; Supp. AR at 3285.)  The ALJ

considered this evidence and suggested in the RFC that her diabetes would cause

some limitations on Plaintiff's RFC.  (AR at 1812.)  In the end, however, the ALJ

essentially concurred in the position of Dr. Clark and found that Plaintiff's diabetes

did not prevent her from engaging in light work.  (*Id.*)

The ALJ maintained this position in an amended decision issued on April 18,

2012, after Plaintiff submitted additional records related to her diabetes.  The ALJ

determined that this additional record evidence in fact established "improved blood

sugar control with better compliance with testing, diet and insulin dosing."  (AR at 1799.)

Plaintiff alleges that these findings are erroneous for two reasons.  First, Plaintiff

suggests that the findings are not supported by substantial evidence.  In particular,

Plaintiff argues, without citation to the record, that the ALJ did not take into account

Plaintiff's multiple visits to the emergency room for problems related to diabetes and

there are numerous reports of Plaintiff's blood sugar being too high or too low.  (Doc.

# 17 at 54.)

This argument fails because it is only one potential interpretation of the facts regarding Plaintiff's diabetes.  Another reasonable view -- the one endorsed by the ALJ and substantiated by Dr. Clark -- is that these hospital visits were caused by, as the ALJ stated, "some expected difficulty learning to monitor her diabetes in the beginning" but that this problem diminished as Plaintiff "matured and became a mother responsible for her child."  (AR at 1812.)  Further, this view is one reasonable interpretation of the medical records submitted after Plaintiff's hearing.  *Compare, e.g.*, (AR at 3189 (noting in March 2010, that Plaintiff is "in a lot of pain in jaw, ear area, [and] abdomen[,]" but that her medicine was "working well"), *with* AR at 3184 (noting in February 2011, that Plaintiff reported "a few low EGs" and had been more compliant with regulating blood sugar by testing her insulin levels "before most meals").  Plainly, the record evidence is sufficient to establish that the ALJ's finding is supported by substantial evidence.

Second, Plaintiff vaguely suggests that the ALJ "should have further considered the effects of claimant's insulin-dependent diabetes on her RFC, and in particular nonexertional limitations."  (Doc. # 17 at 54.)  In her opening brief, Plaintiff leaves this Court in the dark as to how such "further consider[ation]" should have been implemented.  In any case, the ALJ did consider Plaintiff's diabetes: in fact, the ALJ found that Plaintiff's diabetes was a severe medical impairment, *see* (AR at 1806), and specifically discussed her diabetes when assessing her RFC, *see* (AR at 1812).  As the ALJ stated: "[u]ltimately, **due in part to her diabetes**, which was considered in combination with her seizure disorder and history of a brain cyst status post shunt, the undersigned limited this young individual to the range of light work described in the RFC

assessment." (AR at 1812.) The Court finds no error in the manner in which the ALJ considered Plaintiff's diabetes, especially in light of Plaintiff's utterly vague and unsupported allegation to the contrary.[7]

## D. WORK AS A MOTEL MAID

At step four of the sequential evaluation process, the ALJ relied on vocational expert testimony in finding that Plaintiff could perform past relevant work as a motel housekeeper. (AR at 1813.) Because the ALJ found that Plaintiff could perform past relevant work, Plaintiff was not disabled within the meaning of the Social Security Act and the ALJ's inquiry was at an end. *See* 20 C.F.R. § 404.1520(a)(4) (if a decision regarding the claimant's disability can be reached at any step in the sequential evaluation process, further evaluation is unnecessary).

Nevertheless, the ALJ proceeded with the sequential analysis and made an alternative step five finding that Plaintiff could perform other work in the national economy, including jobs as an amusement recreation attendant, assembler, and cafeteria attendant. (AR at 1813-14.) The ALJ concluded that a finding of "not disabled" was appropriate in light of Plaintiff's ability to perform both past relevant work and other work. (AR at 1813-15.)

---

[7] In her Reply, Plaintiff suggests, without citation to any legal authority, that the government had the burden of establishing additional non-exceptional limitations caused by her diabetes. (Doc. # 22 at 8.) Plaintiff is wrong: she has the burden of demonstrating how any impairment affects her functioning. *See* 20 C.F.R. § 404.1512 (claimant has the responsibility of providing evidence "showing how your impairment(s) affects your functioning during the time you say that you are disabled"); 20 C.F.R. § 404.1545(a)(3) (claimant is responsible for providing the evidence used in making the residual functional capacity finding); 68 Fed. Reg. 51,153, 51,155 (Aug. 26, 2003) (comments to final rule) (recognizing a claimant bears the burden of proving residual functional capacity). Plaintiff did not meet this burden in her opening brief -- and her suggestions in the Reply that she may have been afflicted with other symptoms of diabetes find no support in the record.

Plaintiff attacks these findings on a number of grounds, all of which are without merit. First, Plaintiff suggests that the ALJ's step-four finding was inconsistent with a July 2007 determination, in which a different ALJ determined that Plaintiff could not return to past work as a motel housekeeper. This argument fails because the Tenth Circuit has explicitly rejected the application of administrative res judicata or the law of the case doctrine under similar factual circumstances. *See Poppa v. Astrue*, 569 F.3d 1167, 1169-71 (2009). Administrative res judicata applies only where a previous determination has become final by either administrative or judicial action. *Id.* at 1170. The July 2007 determination was not final because Plaintiff sought review from the Appeals Council and then the district court.

Further, the principles of the law of the case doctrine apply only to issues previously decided, either explicitly or by necessary implication, *id.*, and in reversing and remanding the ALJ's July 2007 decision, neither the district court nor the Appeals Council made any determinations, explicit or implicit, as to Plaintiff's residual functional capacity.

Finally, while the ALJ's 2007 finding is contrary to what the ALJ concluded in 2012, the 2012 finding was supported by substantial evidence -- namely, Plaintiff's own hearing testimony that she could clean her own house and the vocational expert's corroboration of what Plaintiff herself admitted she could do. *See* (AR at 1813.)[8]

_____

[8] Plaintiff cites *Hamlin v. Barnhart*, 365 F.3d 1208, 1224 (10th Cir. 2004), seemingly for the proposition that the ALJ must explain why a different ALJ reached a different result in an RFC five years' prior. (Doc. # 17 at 55.) This is not what *Hamlin* holds. To the contrary, a similar inconsistency in *Hamlin* was only one of a myriad of reasons that the Tenth Circuit found that the ALJ's decision "suspect" and ultimately unsupported by substantial evidence. *Hamlin*, 365 F.3d at 1224. This Court finds no obligation -- actual or implied -- requiring an ALJ to explain

Second, Plaintiff speculates that the ALJ's finding that she could work in a hotel or as an amusement ride operator is inconsistent with a finding that Plaintiff should work in a clean environment with a low level of pollutants or a relatively clean environment. But Plaintiff offers no authority in support of her lay opinion that such work is inconsistent with her restriction to work in a relatively clean environment.  Further, Plaintiff fails to note that the vocational expert specifically testified that Plaintiff's past relevant work as a motel housekeeper was consistent with her limitation a "relatively clean" work environment.  *See* (AR at 3255-57); 20 C.F.R. § 404.1560(b)(2) (stating that a vocational expert may offer relevant evidence regarding past relevant work).

## E.      NON-EXERTIONAL LIMITATIONS CAUSED BY CLAIMANT'S IMPAIRMENTS

Plaintiff's next argument is rather difficult to follow and seems to overlap somewhat with the third argument outlined above.  In particular, Plaintiff acknowledges that her "disability claim is largely based on non-exertional impairments caused by her seizure disorder, mental impairments, diabetes, vision impairments and headaches." (Doc. # 17 at 56.)  Plaintiff continues by stating that "[a]lthough the ALJ acknowledged that these impairments existed, **she did not include limitations related to these impairments in her RFC assessment** with the exception of not working at unprotected heights, operating machinery[,] and the need to work in a clean environment.  The more significant limitations imposed by claimant's nonexertional impairments involve claimant's inability to sustain attention, concentration, persistence and pace and maintain employment."  (*Id.* (emphasis added))

---

such a discrepancy and this Court sees concludes that the ALJ's determination was supported by substantial evidence.

This argument fails because it is premised on a number of factual inaccuracies. First, as noted above and contrary to Plaintiff's position here, the ALJ took into account Plaintiff's diabetes impairment in her RFC.  (*See* AR 1812 ("Ultimately, **due in part to her diabetes**, which was considered in combination with her seizure disorder and history of a brain cyst status post shunt, the undersigned limited this young individual to the range of light work described in the RFC assessment.").)  The ALJ also specifically took into account Plaintiff's seizure disorder in creating her RFC.  *See* (AR at 1811-12 (due to her **continued treatment for seizures**, the undersigned restricted claimant to light work and also imposed environmental restrictions, among others, in the residual functional capacity assessment").)[9]  Finally, the ALJ also seems to have taken into account what the ALJ found to be moderate limitations on Plaintiff's pace and concentration by suggesting that she be limited to "light work that could be learned in one month or less."  (AR at 1809.)

In support of her argument, not only does Plaintiff fail to cite to any record evidence, but more importantly, she does not address why these portions of the ALJ's opinion do not undermine her argument.  These deficiencies are fatal to Plaintiff's position here.

---

[9]  Noting that the ALJ relied on the Medical-Vocational Guidelines when finding Plaintiff could perform other work, Plaintiff suggests this was erroneous in light of the existence of non-exertional limitations.  (*See* Pl. Br. 58).  However, the ALJ did not find that the Medical-Vocational Guidelines directed a finding – rather, the ALJ relied on the Guidelines only as a "framework," which is both permitted and anticipated by the regulations, and ultimately considered vocational expert testimony in rendering her decision.  *See* (AR 1814); 20 C.F.R. § 404.1569a(d); SSR 83-14, 1983 WL 31254.

### F.    PLAINTIFF'S PRIOR HEARING TESTIMONY

Lastly, Plaintiff alleges that the ALJ erred by failing to consider any of her testimony at prior hearings before other ALJs.  This argument also fails.  Plaintiff cites no authority that dictates that the ALJ must consider such prior testimony under circumstances similar to those presented here.[10]  Further, Plaintiff does not even bother to supply this Court with a concrete explanation for why closer consideration of this prior testimony would have made a difference: to the contrary, all Plaintiff offers are assertions that the prior testimony was closer in time and that it would be "important to assessing her credibility."  (Doc. # 17 at 59.)

In any case, the fact that Plaintiff's hearing testimony on one day was consistent with her hearing testimony on another day does not change the fact that it was inconsistent with other record evidence.  For the reasons articulated throughout this order, that other record evidence substantially supports the ALJ's unfavorable finding regarding Plaintiff's disability, notwithstanding statements made to the contrary by Plaintiff at any prior hearing.

### III.   CONCLUSION

This Court finds that the ALJ's decision was supported by substantial evidence and the ALJ committed no legal error in reaching her adverse finding as to Plaintiff's disabilities.

---

[10]  Plaintiff implies that *Huston v. Bowen*, 838 F.2d 1125, 1132 (10th Cir. 1988), is factually similar (Doc. # 17 at 59.), but that case involved the testimony of three different witnesses who all provided consistent testimony corroborating a claimant's assertions of debilitating pain that prevented him from working.  And there was certainly no mandate issued in *Huston* requiring an ALJ to consider prior hearing testimony.

Accordingly, it is ORDERED that the ALJ's denial of Supplemental Security Income and Child's Insurance Benefits is AFFIRMED.

It is FURTHER ORDERED that each party shall pay its own costs and attorney fees.

DATED: March 24, 2014

BY THE COURT:

_____
CHRISTINE M. ARGUELLO
United States District Judge